IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **INNOVATIVE SPORTS MANAMGENT,** ) <br> **INC. d/b/a INTEGRATED SPORTS** ) <br> **MEDIA, INC.** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **TADEUSZ KOLODZIE and DANUTA** ) <br> **KRUSELNICKI, indv. and d/b/a DK** ) <br> **CAFÉ, INC. d/b/a DK CAFÉ and DK** ) <br> **CAFÉ, INC. d/b/a DK CAFÉ,** ) <br> ) <br> **Defendants.** | No. 12 C 02985 <br><br> Judge John J. Tharp, Jr. |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the plaintiff's motion for default judgment and prove-up. For the reasons explained below, the Court awards the sum of $7,000 in statutory liquidated damages, enhanced damages, and attorneys' fees and costs, and enters a final default judgment against the defendants in that amount.

I.  Background

Plaintiff Innovative Sports Management, Inc. d/b/a Integrated Sports Media, Inc. ("Innovative Sports") filed this action alleging that Defendants Tadeusz Kolodzie, individually and d/b/a DK Café, Inc. d/b/a DK Café and DK Café, Inc. d/b/a DK Café, knowingly and willfully violated certain provisions of the Communications Act of 1934, 47 U.S.C. § 605 ("Act"), and the Cable Communications Policy Act of 1984, 47 U.S.C. § 553, by unlawfully intercepting and exhibiting "God of Martial Arts: Sylvia v. Pudzianowski" ("Program") on May

1, 2010.[1] Innovative Sports filed the complaint in this matter on April 23, 2012. The alias summons and complaint were served upon the defendants on May 4, 2011. *See* Dkt. 13, Ex. A. To date, the defendants have failed to file an answer, plead, file an appearance, or otherwise defend the allegations in the complaint. Accordingly, the Court enters a default judgment against Defendants Kolodzie d/b/a DK Café, Inc. d/b/a DK Café and DK Café, Inc. d/b/a DK Café. Fed. R. Civ. P. 55(b)(2); *see also O'Brien v. R.J. O'Brien & Associates, Inc.,* 998 F.2d 1394, 1398 (7th Cir. 1993) ("The decision to enter default lies within the district court's discretion," citing *Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 250 (7th Cir. 1990)).

Innovative Sports has filed a memorandum of law, an affidavit, and other documents in support of its request for statutory and enhanced damages, attorneys' fee and costs, and the entry of an award against the defendants.[2] The background facts of this case, except those relating to damages, are taken from the allegations in the plaintiff's complaint and are deemed admitted as a consequence of the defendants' default. *See, e.g., Black v. Lane,* 22 F.3d 1395, 1397 n. 4 (7th Cir. 1994). Innovative Sports has established that it paid for and was thereafter granted the exclusive nationwide television distribution rights to the Program. Various commercial establishments (*i.e.,* hotels, bars, restaurants, etc.) could, for a fee, obtain limited sublicensing rights from Innovative Sports to exhibit the Program to patrons within their respective

---

[1] Summons as to Danuta Kruselnicki were returned unexecuted. On October 9, 2012, this Court granted the plaintiff's oral motion to dismiss Kruselnicki from this action without prejudice. Dkt. 18.

[2] The imposition of liability is proper against both the corporation, DK Café, Inc., and the individual defendant, Tadeusz Kolodzie, because a corporate offer "'who has the right and ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception].'" *Hard Rock Café Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).

establishments. Plaintiff states that it expended substantial sums marketing, advertising, promoting, administering, and transmitting the Program to its paying customers, the aforementioned commercial establishments. Understandably, Innovative Sports wishes to enforce its distribution rights and ensure only those who have paid the appropriate fee, pursuant to a contract, gain access to the Program.

To ensure that only legitimate sub-licensees receive the Program, the plaintiff retains investigators that visit commercial establishments to determine whether the Program is being exhibited without proper authorization. Innovative Sports has submitted the affidavit of one such investigator, who avers that he entered DK Café at 10:17 p.m. on May 21, 2010, the night of the Program, and observed two televisions displaying the Program. The investigator counted a maximum of 52 patrons in the establishment on his third headcount.

As a result of the defendants' default, they are deemed to have unlawfully intercepted the match and shown it to their patrons and to have done so willfully and for the purposes of direct and indirect commercial advantage or private financial gain.[3] *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ([s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

II.  Analysis

Innovative Sports alleges that the defendants violated both 47 U.S.C. §§ 605 and 553. The plaintiff's complaint, brief, and affidavit support a conclusion that the defendants

---

[3] While it is impossible without discovery or an admission from the defendants to determine what method the defendants used to access the cable signal, it is logical to conclude that they must have used an illegal receiver, misrepresented their business establishment as a residence, or engaged in "mirroring" by taking a legitimate receiver from a home to the business establishment in order to intercept the plaintiff's Program.

intercepted, without authorization, a transmission of the Program and broadcast it to its patrons. Whether § 605 or § 553 applies to those facts depends on the point at which the alleged interception occurred. However, the record contains no allegations or evidence substantiating the nature of the transmission (*i.e.,* transmission over a cable system or satellite broadcast) that was intercepted by the defendants. That said, the Court concludes that although the precise means of transmission has not been determined, under the circumstances of this case, where the plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of the defendants' failure to appear or defend in this adjudication, Innovative Sports should not suffer the resulting prejudice. In any event, Innovative Sports is seeking a judgment and damages pursuant to § 605 only, and the practical impact of which statute applies is nil; the Court's calculation of damages fits within either statutory scheme. Thus, the Court concludes that the plaintiff has established a violation of § 605.

Under §605(a), a claimant may elect actual or statutory damages pursuant to § 605(e)(3)(C)(i). The plaintiff has elected statutory liquidated damages, which range from a minimum of $1,000 to a maximum of $10,000, within the Court's discretion.[4] The plaintiff also seeks enhanced damages for willful violations under § 605(e)(3)(C)(ii).[5] That section permits

---

[4] Under § 605(e)(3)(C)(i)(II), an aggrieved party "may recover an award of statutory damages for each violation of subsection (a)…in a sum not less than $1,000 or more than $10,000 as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

[5] Section 605(e)(3)(C)(ii) provides that:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages…by an amount of not more than $100,000 for each violation on subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).

enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.,* 146 F. Supp. 2d 955, 959-61 (E.D. Wis. 2001). The plaintiff has also requested an award of attorneys' fees and costs in the amount of $1,860.25 pursuant to § 605(e)(3)(B)(iii).[6]

The Court first turns to the plaintiff's request for statutory damages. As this district has previously noted, "[w]hen the number of patrons at defendant's establishment is known, most courts award damages under § 605 based on the number of patrons." *J&J Sports Production, Inc. v. Ramirez,* No. 08 C 03354, Minute Order, at 1-2 (N.D. Ill. Sept. 18, 2008), ECF No. 20 (basing award on $55 per patron, citing *That's Entertainment, Inc. v. Old Bridge Tavern,* No. 94 C 02612, 1996 WL 148045 (N.D. Ill. Mar. 28, 1996) (awarding $55 per patron to "sufficiently compensate[] plaintiff while…also deter[ing] defendant from future violations"); *J&J Sports Production, Inc. v. Schrader Rest. Corp.,* 485 F. Supp. 2d 422, 423 (S.D.N.Y. 2007) (awarding damages based on Judge Baer's formula of $50 per patron, plus $1,000 for each willful violation, plus attorneys' fees and costs); *see also Googies Luncheonette,* 77 F. Supp. 2d at 490 (adopting a method of awarding a set sum to be multiplied by the number of patrons, plus any cover charge or other profit that can be attributed to the unauthorized showing, in order to fully compensate the plaintiff and fully divest the defendant of any profits). On the date in question, the investigator observed a maximum of 52 patrons on his third headcount.[7]

---

[6] Section 605(e)(3)(B)(iii) states that the Court "shall direct the recovery of full costs, including awarding attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

[7] The Court uses the maximum patrons counted by the investigator, but notes that both the total and maximum number of patrons may have been higher, depending on the rate of turnover of customers. However, the materials submitted by the plaintiff do not provide a way for the Court to determine the number of customers who actually viewed the Program.

While other courts have determined a set sum per patron (*i.e.,* $55 per patron), the plaintiff here has submitted a rate card establishing the fees that commercial establishments would have had to pay to obtain sublicensing rights. Based on a maximum of 52 patrons, the defendants would have had to pay $1,000 to order the Program. *See* Dkt. 13, Ex. C (seating 50 to 100 subject to a rate of $1,000). This base amount, however, would only compensate the plaintiff for its loss, and not fully divest the defendants of any profits derived from unlawfully exhibiting the program, such as the sale of drinks. But as noted above, the Plaintiff alleges and, in the absence of any response from the defendants, the Court has concluded that the defendants' violation was willful within the meaning of the Act, and therefore subject to enhanced damages.

In regard to enhanced damages, the Act simply sets forth a maximum recovery and otherwise leaves the matter to the discretion of the Court. In considering how much to award in enhanced damages, courts have considered a number of factors, including: (1) the number of violations; (2) defendants' unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendants advertised for the event; and (5) whether the defendant collected a cover charge on the night of the event. *See Ramirez,* No 08 C 03354, at 2 (citing *Kingvision Pay-Per-View, Ltd. v. Rodriquez,* No. 02 Civ. 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). In addition to those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct. *See, e.g., Garden City Boxing Club, Inc. v. Luis Polanco & Luischia Restaurant Corp.,* No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); *Rodriguez,* 2003 WL 548891, at *2. "An additional award for willfulness will put violators 'on notice that it costs less to obey the…laws than to violate them.'" *Googies Luncheonette,* 77 F. Supp. 2d at 491 (citing *Rodgers v. Eighty Four Lumber Co.,* 623 F. Supp. 889, 892 (W.D. Pa. 1985)).

The record before the Court does not establish that the defendants advertised the event, charged a cover charge, or that they are repeat offenders. However, the investigator's affidavit does establish that the Program was displayed on two of the defendants' televisions, the third television being turned off, making the plaintiff's Program the sole entertainment being exhibited on the night in question. With *Googies Luncheonette* as a guide, the Court awards the plaintiff an additional $4,000 in enhanced damages—a factor of four times the base award derived from the defendants' display of the program on two televisions and additional profits derived from the unlawful exhibition of the Program (*e.g.,* drink sales), in addition to the need to deter future violations. *See Googies Luncheonette,* 77 F. Supp. at 491. Accordingly, statutory and enhanced damages total $5,000.

Finally, the Court has reviewed the materials submitted in support of the plaintiff's request for $1,860.25 in attorneys' fees and costs. The Court finds the amount in the affidavit well supported and reasonable given the circumstances. Therefore, the sum of damages and attorney's fees and costs is $6,860.25, which the Court, in its discretion and consistent with the statute, increases to $7,000.

\*   \*   \*

For the reasons stated above, the Court enters a final judgment for the plaintiff and against the defendants, jointly and severally, in the amount of $7,000.

Date: October 23, 2012

_____
John J. Tharp, Jr.
United States District Judge